STATE OF SOUTH DAKOTA :                          IN CIRCUIT COURT
                                        SS
COUNTY OF LAWRENCE      :                    FOURTH JUDICIAL CIRCUIT


**SDIF Limited Partnership 2**, a South      )
Dakota limited partnership,                  )
                                             )
     Plaintiff,                             )
                                             )
                                             )    File No. 40CIV16 _____
vs.                                          )
                                             )
**Tentexkota, L.L.C.**, a South Dakota       )
limited liability company,                   )
**W. Kenneth Alphin,**                       )         **SUMMONS**
**Timothy J. Conrad,**                       )
**Michael R. Gustafson,**                    )
**George D. Mitchell,**                      )
**Dale Morris,**                             )
**Marc W. Oswald,**                          )
**Ronald W. Wheeler,** and                   )
**Dwight P. Wiles,**                         )
                                             )
     Defendants.                            )


TO THE ABOVE-NAMED DEFENDANTS:


     You are hereby summoned and required to serve upon Haven L. Stuck of Lynn,

Jackson, Shultz & Lebrun, P.C., attorneys for the Plaintiff, whose address is 909 St.

Joseph Street, PO Box 8250, Rapid City, SD  57709, an Answer to the Complaint which

is herewith served upon you, within thirty (30) days after the service of this Summons

upon you, exclusive of the day of service.




**EXHIBIT**

"A"

If you fail to do so, judgment by default may be rendered against you for the relief
requested in the Complaint.

Dated November 3, 2016.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By:

Haven L. Stuck
Attorneys for Plaintiff
PO Box 8250
Rapid City, SD  57709
605-342-2592

2

STATE OF SOUTH DAKOTA :            IN CIRCUIT COURT
                                          SS
COUNTY OF LAWRENCE    :          FOURTH JUDICIAL CIRCUIT

| | |
|---|---|
| **SDIF Limited Partnership 2**, a South Dakota limited partnership, )<br>)<br>) | |
| Plaintiff, )<br>) | File No. 40CIV-16_____ |
| vs. )<br>) | |
| **Tentexkota, L.L.C.**, a South Dakota limited liability company,<br>**W. Kenneth Alphin,**<br>**Timothy J. Conrad,**<br>**Michael R. Gustafson,**<br>**George D. Mitchell,**<br>**Dale Morris,**<br>**Marc W. Oswald,**<br>**Ronald W. Wheeler,** and<br>**Dwight P. Wiles,**<br><br>Defendants. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT** |

For its Complaint against Defendants, Plaintiff states and alleges as follows:

1.    Plaintiff, SDIF Limited Partnership 2 (hereafter "SDIF LP2") is a limited partnership, duly formed under the laws of the State of South Dakota.

2.    Defendant, Tentexkota, L.L.C. (hereafter "Tentexkota"), is a limited liability company, organized under the laws of the State of South Dakota and doing business in South Dakota.

3.    Defendants, W. Kenneth Alphin, Timothy J. Conrad, Michael R. Gustafson, George D. Mitchell, Dale Morris, Marc W. Oswald, Ronald W. Wheeler, and Dwight P. Wiles, to the best of Plaintiff's knowledge and at all times relevant herein, are members

of Tentexkota, L.L.C.  Said Defendants guaranteed the indebtedness of Tentexkota to Plaintiff.

4.     Tentexkota and the other Defendants have consented to the jurisdiction of this Court.

5.     Tentexkota executed a Promissory Note on April 28, 2010, agreeing to pay to SDIF LP2 Twenty-Eight Million Dollars ($28,000,000), with interest thereon at four and a half percent (4.5%) per annum.  A copy of the Promissory Note is attached hereto as Exhibit A.

6.     To induce SDIF LP2 to make the loan evidenced by the above-referenced Promissory Note, Defendants W. Kenneth Alphin, Timothy J. Conrad, Michael R. Gustafson, George D. Mitchell, Dale Morris, Marc W. Oswald, Ronald W. Wheeler, and Dwight P. Wiles, executed Guaranty and Pledge Agreements, copies of which are attached hereto as Exhibits B, C, D, E, F, G, H, and I.

7.     On April 4, 2011, Tentexkota executed a second Promissory Note agreeing to pay to SDIF LP2 Four Million Five Hundred Thousand Dollars ($4,500,000), with interest thereon at four and a half percent (4.5%) per annum.  A copy of this Promissory Note is attached hereto as Exhibit J.

8.     To induce SDIF LP2 to make the loan evidenced by the Promissory Note, attached hereto as Exhibit J, Defendants W. Kenneth Alphin, Timothy J. Conrad, Michael R. Gustafson, George D. Mitchell, Dale Morris, Marc W. Oswald, Ronald W. Wheeler,

2

and Dwight P. Wiles executed Guaranty and Pledge Agreements, copies of which are attached hereto as Exhibits K, L, M, N, O, P, Q, and R.

9.     The total amount loaned to Tentexkota under the two Promissory Notes is Thirty-Two Million Five Hundred Thousand Dollars ($32,500,000). The individual Defendants have guaranteed repayment of said amount through the attached Guaranty and Pledge Agreements.

10.     The entire principal and all accrued interest on the Promissory Notes was due on April 28, 2015. Said payments were not made, and Defendants became in default.

11.     Following default, Tentexkota and its Members as Guarantors, entered into a Forbearance Agreement with SDIF LP2. Said Forbearance Agreement is attached as Exhibit S.

12.     Under the Forbearance Agreement, the Defendants promised to pay the outstanding obligation of Thirty-Two Million Five Hundred Thousand Dollars ($32,500,000) and all accrued interest on or before May 7, 2016.

13.     Defendants failed to pay said amount due to SDIF LP2 under the terms of the Forbearance Agreement and are in default.

14.     On May 11, 2016, Defendants were served a Notice of Default. Said Notice is attached as Exhibit T. Interest accrues on the entire amount due from the date of the Notice at the default interest rate of twelve percent (12%) per annum as stated in said Notice of Default.

3

15.    Under the terms of the attached Notes and Guaranty and Pledge Agreements, Plaintiff is entitled to recover its attorney fees and expenses incurred herein.

16.    Defendants are in default and liable to Plaintiff for Thirty-Two Million Five Hundred Thousand Dollars ($32,500,000), plus interest, and attorney fees and expenses incurred in collecting such amount.

WHEREFORE, Plaintiff prays for a Judgment against the Defendants, jointly and severally, in the amount of Thirty-Two Million Five Hundred Thousand Dollars ($32,500,000), plus prejudgment interest thereon, and its attorney fees and costs in bringing this action, and such further relief the Court deems just and equitable.

Dated November 3d, 2016.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By_____
Haven L. Stuck
Attorneys for Plaintiff
PO Box 8250
Rapid City, SD  57709
605-342-2592
hstuck@lynnjackson.com

4

## PROMISSORY NOTE



On April 2̲8̲ , 2010, for value received, Tentexkota, L.L.C., a South Dakota Limited Liability Company organized under the laws of the State of South Dakota, (hereinafter referred to as "Borrower") whose principal place of business is 440 Mt. Rushmore Road, Rapid City, South Dakota 57701 hereby promises to pay as follows:

**1.     Borrower's Promise to Pay.**

In return for a loan that I have received, I promise to pay up to U.S. $28,000,000 (this amount is called "principal"), plus interest to the order of Lender. Lender is SDIF Limited Partnership 2 of 416 Production Street North, Aberdeen, South Dakota 57401.

I understand that if said loan is funded for less than $28,000,000, at the discretion of Lender, then said amount funded by August 1, 2010 shall be the loan amount.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is to be called the "Lender."

I understand that the amount funded could be less than the stated amount above if the U.S. Immigration and Naturalization Service does not approve all cases. In such an event, said amount shall be considered the amount approved and funded.

**2.     Interest.**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 4.5%.

**3.     Payments.**

**(A) Time and Place of Payments.**

I will pay interest yearly on the anniversary date of the first disbursement of said funds. All interest accrued during the given year shall be paid in full. The entire principal amount shall be due in full on the 5th year anniversary from the date of the funding of the first loan. Such payment shall be due on A̲p̲r̲i̲l̲ 2̲8̲ , 2015.

**(B) Amount of Yearly Payments.**

My yearly payment will be in the amount of all interest earned for the year.

EXHIBIT

A

4.    **Borrower's Right to Prepay.**

I have the right to make prepayment of principal only if all investors have received removal of any conditions imposed by U.S. Immigration and Naturalization Service, pursuant to the EB-5 Program. Only when that has been received, will I be entitled to make any prepayment at the sole discretion of Lender.

I may make a full prepayment or partial prepayments without paying any repayment charge. Lender will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my yearly payment unless Lender agrees in writing to those changes. Lender shall notify Borrower when all conditions have been removed.

5.    **Loan Charges.**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduced principal, the reduction will be treated as a partial prepayment.

6.    **Borrower's Failure to Pay as Required.**

(A) **Late Charge for Overdue Payments**

If a Lender has not received the full payment of any yearly interest payment by the end of ten calendar days after the same is due, I will pay a late charge to Lender. The amount of the charge will be 10% of my overdue payment of interest.

(B) **Default**

If I do not pay the full amount of each annual payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, Lender may send me a written notice telling me that if I do not pay the overdue amount by a certain date, Lender may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

2

**(D) No Waiver by Lender**

Even if, at a time when I am in default, Lender does not require me to pay immediately in full as described above, Lender will still have the right to do so if I am in default at a later time.

**(E) Payment of Lender's Costs and Expenses**

If Lender has required me to pay immediately in full as described above, Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorneys' fees.

## 7. Giving of Notices.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give Lender a notice of my different address.

Any notice that must be given to Lender under this Note will be given by mailing it by first class mail to Lender at the address stated in Section 1 above or at a different address if I am given a notice of that different address.

## 8.   Obligations of Persons Under this Note.

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. Waivers

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**10. Secured Note.**

In addition to the protections given to Lender under this Note, a Mortgage and Security Interest (the "Security Instrument"), dated the same date as this Note, protects Lender from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument described how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) Transfer of the Property or a Beneficial Interest in Borrower**

If all or any part of the Property as defined in the Mortgage, or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, it its option, require immediate payment in full of all sums secured by this document. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this document.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this document. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this document without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Signatures of Borrower:

Tentexkota, L.L.C.

EIN: 20 - 8325145

By: Dwight P. Wiles

Its: Managing Member

4

From:                                    04/2    10 16:34    #993 P.001/003



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the *23* day of
*APRIL* , 2010, by *W. K. ALPHIN* of
*NASHVILLE, TN* (the "Guarantor") in favor of SDIF Limited
Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the
"Lender"), as making the following loan to Borrower:

### BACKGROUND OF AGREEMENT:

A.  Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the
    "Borrower"), have on this day entered into a Credit Agreement (the "Credit
    Agreement") and other loan documents, under the terms of which Lender will lend
    $28,000,000 to Borrower.

B.  Guarantor, as member of Borrower, has a substantial financial stake in Borrower and
    will substantially benefit from the performance by Lender of its obligations under the
    Credit Agreement and other loan documents.

C.  The execution of this Agreement is an express condition to the consummation of the
    transactions contemplated by the Credit Agreement and other loan documents and
    Lender is unwilling to enter into or perform in accordance with the Credit Agreement
    and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the
Credit Agreement and other loan documents, and further as an inducement to Lender to
enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as
follows:

1.  DEFINITIONS. In this Agreement, the following frequently used terms are
defined as set forth in this Paragraph 1:

    (a)    Any terms used in this Agreement which are defined in the Credit
Agreement will have the same meaning herein as is ascribed to such term in the Credit
Agreement.

    (b)    The "Loan Documents" are, collectively, the Credit Agreement, the
Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment,
Financing Statement and Mortgage between Lender and Borrower dated this day.

    (c)    The "Obligations" means all of the obligations of Borrower and
Guarantor pursuant to the Loan Documents.

    (d)    The term "Guarantor" means *W.K. ALPHIN* as an individual.

    (e)    The "Securities" means the (Membership Units) of Borrower listed on
Schedule I attached to this Agreement and made a part hereof, together with all other or
additional Membership Units to which Guarantor (without additional consideration) now is,
or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a
result of any corporate reorganization, merger or consolidation, stock split, stock dividend,
or otherwise.

EXHIBIT

B

(f)      A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)      The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)      Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)      Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)      At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)      Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)      Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)      Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest.   Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)      Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)      Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)      Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)      No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

    5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

    (a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property of assets of Guarantor, except as contemplated by the provisions of this Agreement;

    (b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

    (c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

    (d)    The undersigned shall provide updated financial statements by May 1 of each year.

    6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

    7.    DEFAULT.

    (a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b) In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c) Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d) In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e) Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8. INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9.    MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

From:                                             04/.  .J10 16:35      #993 P.003/003

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



COPY

# GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the _22_ day of _April_, 2010, by _Timothy Conrad_ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A. Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B. Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C. The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1. DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a) Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b) The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c) The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d) The term "Guarantor" means _Tim Conrad_ as an individual.

(e) The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof, together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT
C

11/22/2010 08:36 FAX 928 855 1281

(f)      A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)      The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.      GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses, including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.      PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith, delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.      TERMS AND CONDITIONS.

(a)      Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)      Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support of the Obligations; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)      At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)      Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)      Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge of any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.   WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)   The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement.

(b)   This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)   As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule 1; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)   The undersigned shall provide updated financial statements by May 1 of each year.

6.   VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.   DEFAULT.

(a)   Upon and during the continuance of any Default, Lender may, at its sole election (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower; and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses incurred, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9.   MISCELLANEOUS.

(a)   This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)   This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)   THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)   The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)   No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)   If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By _____

Its: _Member - Co owner_

6



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the 22ᴺᴰ day of April, 2010, by MICHAEL R. GUSTAFSON of _____ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

BACKGROUND OF AGREEMENT:

A.  Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B.  Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C.  The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1.  DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)  Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b)  The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)  The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)  The term "Guarantor" means MICHAEL R. GUSTAFSON as an individual.

(e)  The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof, together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.



EXHIBIT

B

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest.  Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against or in payment of any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5. **WARRANTIES AND REPRESENTATIONS.** Guarantor hereby represents and warrants to Lender that:

(a) The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b) This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c) As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d) The undersigned shall provide updated financial statements by May 1 of each year.

6. **VOTING RIGHTS.** Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7. **DEFAULT.**

(a) Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party, or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9.   MISCELLANEOUS.

(a)   This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)   This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)   THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)   The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)   No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)   If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _Bradly Hermanson_

FOR: MICHAEL R. GUSTAFSON

As: WITH SPECIAL POWER OF ATTORNEY

COPY ATTACHED

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

11.9625  (%)

7

## SPECIAL POWER OF ATTORNEY

KNOWN ALL MEN BY THESE PRESENTS:

That I, MICHAEL R. GUSTAFSON, do make, constitute and appoint BRADLEY HEMMAH as my true and lawful attorney-in-fact to execute any and all documents in connection to the loan guarantee of principal balance up to 32 million dollars for the benefit of TENTEXKOTA, LLC. upon such terms, consideration and conditions as my said attorney shall deem advisable, necessary, convenient or proper and to sign in my name, place and stead any document whatsoever necessary, and to make, sign, indorse, act, give or receive any instrument of any kind or nature as may be necessary or proper to complete this purpose.

And I hereby declare that unless sooner terminated by me all power granted herein to my attorney shall terminate on the 15th day of May, 2010.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _6th_ day of April, 2010.

_____
MICHAEL R. GUSTAFSON

STATE OF _ARIZONA_    )
COUNTY OF _MARICOPA_  ) :SS

On this _6th_ day of April, 2010, before me, the undersigned officer, personally appeared MICHAEL R. GUSTAFSON, known to me or satisfactorily proved to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

(SEAL)

DINA R. SELL
Notary Public - Arizona
Maricopa County
Expires 02/16/2011

_____
Notary Public

My commission expires: _2-16-2011_

GUARANTY AND PLEDGE AGREEMENT



This Guaranty and Pledge Agreement (the "Agreement") is made on the 22 day of April, 2010, by George D Mitchell of Deadwood, SD (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

BACKGROUND OF AGREEMENT:

A.  Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B.  Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C.  The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1.  DEFINITIONS: In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)  Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b)  The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)  The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)  The term "Guarantor" means George D Mitchell as an individual.

(e)  The "Securities" means the (Membership Units) of Borrower listed on Schedule 1 attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

E

(f)    A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)    The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.    GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.    PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.    TERMS AND CONDITIONS.

(a)    Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)    Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)    At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)    Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)    Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest.   Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)    The undersigned shall provide updated financial statements by May 1 of each year.

6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.    DEFAULT.

(a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.  . INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9.   MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _Individual_

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.   5.7425 (%)

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the __21__ day of __April__ , 2010, by __Dale Morris__ of _____ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making pooled loan to Borrower follows:

### BACKGROUND OF AGREEMENT:

A. Lender and Tenterkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B. Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C. The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1. DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a) Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b) The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c) The "Obligations" mean all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d) The term "Guarantor" means __Dale Morris__ as an individual.

(e) The "Securities" means the securities of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional securities to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the securities as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

(f) A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure

EXHIBIT

F

of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF SECURITIES. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Securities, with stock powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their

2

name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest.   Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver

3

by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Securities; (ii) the Securities are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the securities transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Securities owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.    DEFAULT.

(a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Securities, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Securities for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Securities and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for properly actually received.

4

(b)      In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)      Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)      In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Securities may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)      Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.      INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.      MISCELLANEOUS.

5

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENT THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

SECURITIES OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the _21_ day of _April_, 2010, by _Marc W. Oswald_ of _Beadwood Investment_ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

BACKGROUND OF AGREEMENT:

A.  Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B.  Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C.  The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1.  DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)  Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b)  The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)  The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)  The term "Guarantor" means _Marc Oswald_ as an individual.

(e)  The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT
G

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)  Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)  Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)  Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)  Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)  No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)    The undersigned shall provide updated financial statements by May 1 of each year.

6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.    DEFAULT.

(a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, and Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9. MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _Marc W Otus_____

Its: _President_____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the 22ᵘᵈ day of APRIL, 2010, by RONALD W. WHEELER of DEADWOOD, SOUTH DAKOTA (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

### BACKGROUND OF AGREEMENT:

A.   Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means RONALD W. WHEELER as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.



EXHIBIT

H

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY.  Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest.   Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)    The undersigned shall provide updated financial statements by May 1 of each year.

6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.    DEFAULT.

(a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b) In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c) Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d) In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e) Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8. INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9.   MISCELLANEOUS.

(a)      This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)      This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)      THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)      The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)      No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)      If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: INDIVIDUALLY _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

5.7425 (%)

7



# GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the 28 day of April, 2010, by Dwight P. Wiles of (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.  Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into a Credit Agreement (the "Credit Agreement") and other loan documents, under the terms of which Lender will lend $28,000,000 to Borrower.

B.  Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Credit Agreement and other loan documents.

C.  The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Credit Agreement, Guarantor hereby agrees as follows:

1.  DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)  Any terms used in this Agreement which are defined in the Credit Agreement will have the same meaning herein as is ascribed to such term in the Credit Agreement.

(b)  The "Loan Documents" are, collectively, the Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)  The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)  The term "Guarantor" means Dwight P. Wiles as an individual.

(e)  The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

I

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest.  Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing, but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)  .    Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed

3

to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)    The undersigned shall provide updated financial statements by May 1 of each year.

6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.    DEFAULT.

(a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or

4

apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)      In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)      Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)      In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)      Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.      INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

5

9.   MISCELLANEOUS.

(a)      This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)      This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)      THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)      The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)      No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)      If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



## PROMISSORY NOTE

On the 4ᵀᴴ day APRIL_____, 2011, for value received, Tentexkota, L.L.C., a South Dakota Limited Liability Company organized under the laws of the State of South Dakota, (hereinafter referred to as "Borrower") whose principal place of business is 440 Mt. Rushmore Road, Rapid City, South Dakota 57701 hereby promises to pay as follows:

**1.  Borrower's Promise to Pay.**

In return for a loan that Borrower has received, Borrower promises to pay the principal sum of Four Million Five Hundred Thousand Dollars ($4,500,000 (this amount is called "Principal")), plus interest to the order of Lender. Lender is SDIF Limited Partnership 2 of 416 Production Street North, Aberdeen, South Dakota 57401.

Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is to be called the "Lender."

Borrower understands that the amount funded could be less than the stated amount above, if the U.S. Immigration and Naturalization Service does not approve all cases. In such an event, said amount shall be considered the amount approved and funded.

**2.  Interest.**

Interest will be charged on unpaid principal until the full amount of Principal has been paid at a yearly rate of 4.5%.

**3.  Payments.**

**(A) Time and Place of Payments.**

Borrower will pay interest yearly on the anniversary date of the first disbursement of said funds, such date was April 28, 2010. All interest accrued during the given year shall be paid in full. The entire Principal amount shall be due in full on the 5ᵗʰ year anniversary from the date of the funding of the first loan. Such payment shall be due on April 28, 2015.

**(B) Amount of Yearly Payments.**

The yearly payment shall be in the amount of all interest earned for the year.

**4.  Borrower's Right to Prepay.**

Borrower has the right to make prepayment of Principal only if all investors have received removal of any conditions imposed by U.S. Immigration and Naturalization Service,

EXHIBIT

J

pursuant to the EB-5 Program.  Only when that has been received, will Borrower be entitled to make any prepayment at the sole discretion of Lender.  Lender shall notify Borrower in writing when conditions have been removed.

Borrower may make a full prepayment or partial prepayments without paying any repayment charge.  Lender will use all of Borrower's prepayments to reduce the amount of Principal that Borrower owes under this Note.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of Borrower's yearly payment unless Lender agrees in writing to those changes.  Lender shall notify Borrower when all conditions have been removed.

5.    **Loan Charges.**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower, which exceeded permitted limits, will be refunded to Borrower.  Lender may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borrower.  If a refund reduced Principal, the reduction will be treated as a partial prepayment.

6.    **Borrower's Failure to Pay as Required.**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full payment of any yearly interest payment by the end of ten (10) calendar days after the same is due, Borrower will pay a late charge to Lender.  The amount of the charge will be 10% of the overdue payment of interest.  In addition thereto, interest shall accrue on any unpaid amount at the default rate of 10%.

**(B) Default**

If Borrower does not pay the full amount of each annual payment on the date it is due, Borrower will be in default.

**(C) Notice of Default**

If Borrower is in default, Lender shall send Borrower a written notice telling Borrower that if Borrower does not pay the overdue amount by a certain date, Lender may require Borrower to pay immediately the full amount of Principal which has not been paid and all interest that Borrower owes on that amount.  That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to Borrower.

2

**(D) No Waiver by Lender**

> Even if, at a time when Borrower is in default, Lender does not require Borrower to pay immediately in full as described above, Lender will still have the right to do so if Borrower is in default at a later time.

**(E) Payment of Lender's Costs and Expenses**

> If Lender has required Borrower to pay immediately in full as described above, Lender will have the right to be paid back by Borrower for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorneys' fees.

**7. Giving of Notices.**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address, if Borrower gives Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by mailing it by first class mail to Lender at the address stated in Section 1 above or at a different address, if Borrower is given a notice of that different address.

**8.    Obligations of Persons Under this Note.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.   Any person who takes over this obligation, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all individuals together.   This means that any one of the individuals may be required to pay all of the amounts owed under this Note.

**9. Waivers**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

3

**10. Secured Note.**

In addition to the protections given to Lender under this Note, a Mortgage and Security Interest (the "Security Instrument"), dated the same date as this Note, protects Lender from possible losses which might result if Borrower does not keep the promises which Borrower made in this Note. That Security Instrument describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts Borrower owes under this Note. Some of those conditions are described as follows:

**(A) Transfer of the Property or a Beneficial Interest in Borrower**

If all or any part of the Property as defined in the Mortgage, or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, it its option, require immediate payment in full of all sums secured by this document. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this document.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than sixty (60) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this document. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this document without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Signatures of Borrower:

_D. Wheeler_

Tentexkota, L.L.C.

EIN: 20 - 8325145

By: RONALD W. WHEELER

Its: OPERATING MANAGER

4



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the __6__ day of __July__, 2011, by: _____ _W. Kenneth Alphin_ _____ of _____ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.   Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means __W. Kenneth Alphin__ as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

K

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g).     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.   WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)   The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)   This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)   As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)   The undersigned shall provide updated financial statements by May 1 of each year.

6.   VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.   DEFAULT.

(a)   Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)   In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)   Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)   In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)   Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.   INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.   MISCELLANEOUS.

(a)   This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.          14.86%

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the 5 day of April , 2011, by Timothy Conrad of (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.   Lender and Tontexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means Tim Conrad as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

L

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g).     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)    Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)    Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)    Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)    Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)    No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.   WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)   The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)   This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)   As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid, and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)   The undersigned shall provide updated financial statements by May 1 of each year.

6.   VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.   DEFAULT.

(a)   Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower; and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b) In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c) Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d) In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e) Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.   INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.   MISCELLANEOUS.

(a) This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)      This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)      THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)      The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)      No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)      If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _Jim Thomas_____

Its: _Member_____

6

## SCHEDULE I

### MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.        1.90%

7

COPY

## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the _15_ day of _APRIL_, 2011, by _MICHAEL R GUSTAFSON_ of _DEADWOOD SOUTH DAKOTA_ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

### BACKGROUND OF AGREEMENT:

A.    Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.    Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.    The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.    DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)    Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)    The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)    The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)    The term "Guarantor" means _Michael R Gustafson_ as an individual.

(e)    The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof, together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

M

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g).     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in waiting, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.    WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)    The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)    This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)    As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)    The undersigned shall provide updated financial statements by May 1 of each year.

6.    VOTING RIGHTS. Unless and until a Default hereunder shall have occured, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.    DEFAULT.

(a)    Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.     MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)    This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)    THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)    The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)    No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)    If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the ___ day of _April_ 2011, by _George V Mitchell_ of _SDIF_ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.   Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means _S. Mitchell_ as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

N

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g).     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5. WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a) The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b) This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c) As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d) The undersigned shall provide updated financial statements by May 1 of each year.

6. VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7. DEFAULT.

(a) Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.     MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

      (b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

      (c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

      (d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

      (e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

      (f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7

# GUARANTY AND PLEDGE AGREEMENT

COPY

This Guaranty and Pledge Agreement (the "Agreement") is made on the ___6___ day of __July__ , 2011, by _____ Dale Morris _____ of _____ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.   Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means ___Dale Morris___ as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof, together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

O

(f)       A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g).      The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.       GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.       PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.       TERMS AND CONDITIONS.

(a)       Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)       Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)       At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)       Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)       Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)   Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)   Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)   Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)   Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)   No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.  WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)  The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)  This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)  As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)  The undersigned shall provide updated financial statements by May 1 of each year.

6.  VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.  DEFAULT.

(a)  Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind, including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.     MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b) This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c) THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d) The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e) No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f) If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.        22.97%

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the _____ day of _____, 2011, by Marc Oswald _____ of _____ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

### BACKGROUND OF AGREEMENT:

A.   Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means ___Marc Oswald___ as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

P

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5. WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a) The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b) This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c) As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d) The undersigned shall provide updated financial statements by May 1 of each year.

6. VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7. DEFAULT.

(a) Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind, including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.     MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b) This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c) THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d) The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e) No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f) If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _Mac L Osuald_

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the 4TH day of April, 2011, by RONALD W. WHEELER of DEADWOOD, SOUTH DAKOTA (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.   Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.   Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.   The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.   DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)   Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)   The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)   The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)   The term "Guarantor" means RONALD W. WHEELER as an individual.

(e)   The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and, made a part hereof, together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

Q

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g)     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or, in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5.   WARRANTIES AND REPRESENTATIONS. Guarantor hereby represents and warrants to Lender that:

(a)   The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b)   This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c)   As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d)   The undersigned shall provide updated financial statements by May 1 of each year.

6.   VOTING RIGHTS. Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7.   DEFAULT.

(a)   Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)      In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)      Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)      In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)      Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.      INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.   MISCELLANEOUS.

(a)      This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)       This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)       THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)       The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)       No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)       If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

RONALD W. WHEELER

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7



## GUARANTY AND PLEDGE AGREEMENT

This Guaranty and Pledge Agreement (the "Agreement") is made on the _____ day of _____, 2011, by _Dwight Wiles_ of _____ (the "Guarantor") in favor of SDIF Limited Partnership 2, of 416 Production Street North, Aberdeen, South Dakota 57401, (the "Lender"), as making the following loan to Borrower:

## BACKGROUND OF AGREEMENT:

A.  Lender and Tentexkota, L.L.C., a South Dakota Limited Liability Company, (the "Borrower"), have on this day entered into an Amendment to Credit Agreement (the "Amendment to Credit Agreement") and other loan documents, under the terms of which Lender will lend up to Four Million Five Hundred Thousand Dollars ($4,500,000) to Borrower.

B.  Guarantor, as member of Borrower, has a substantial financial stake in Borrower and will substantially benefit from the performance by Lender of its obligations under the Amendment to Credit Agreement and other loan documents.

C.  The execution of this Agreement is an express condition to the consummation of the transactions contemplated by the Amendment to Credit Agreement and other loan documents and Lender is unwilling to enter into or perform in accordance with the Amendment to Credit Agreement and other loan documents in the absence of the execution of this Agreement.

THEREFORE, in consideration of the obligations to be assumed by Lender pursuant to the Amendment to Credit Agreement and other loan documents, and further as an inducement to Lender to enter into and perform in accordance with the Amendment to Credit Agreement, Guarantor hereby agrees as follows:

1.  DEFINITIONS. In this Agreement, the following frequently used terms are defined as set forth in this Paragraph 1:

(a)  Any terms used in this Agreement which are defined in the Amendment to Credit Agreement will have the same meaning herein as is ascribed to such term in the Amendment to Credit Agreement.

(b)  The "Loan Documents" are, collectively, the Amendment to Credit Agreement, the Promissory Note, Security Agreement and Pledge Agreement, Collateral Assignment, Financing Statement and Mortgage between Lender and Borrower dated this day.

(c)  The "Obligations" means all of the obligations of Borrower and Guarantor pursuant to the Loan Documents.

(d)  The term "Guarantor" means _Dwight Wiles_ as an individual.

(e)  The "Securities" means the (Membership Units) of Borrower listed on Schedule I attached to this Agreement and made a part hereof; together with all other or additional Membership Units to which Guarantor (without additional consideration) now is, or hereafter may be, entitled by virtue of his ownership of any of the Membership Units as a result of any corporate reorganization, merger or consolidation, stock split, stock dividend, or otherwise.

EXHIBIT

R

(f)     A "Default" means the occurrence of an event of default by Borrower pursuant to or in accordance with the provisions of any of the Loan Documents or the failure of Guarantor to perform any covenant or agreement contained in this Agreement or if any representation or warranty contained in this Agreement is found to have been untrue, incomplete or misleading in any material respect when furnished.

(g).     The "Collateral" means all assets, property, and interests in assets and property in which a security interest is granted and a pledge is made by Guarantor pursuant to paragraph 3 below.

2.     GUARANTY. Guarantor unconditionally and irrevocably guaranties to Lender the full and prompt payment and performance when due, whether at maturity or earlier (by reason of acceleration) and at all times thereafter, of all of the Obligations, and further agrees to pay all costs and expenses including, without limitation, all court costs and reasonable attorneys' fees and expenses paid or incurred in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower or Guarantor.

3.     PLEDGE OF MEMBERSHIP UNITS. In addition, to secure the payment and performance of the Obligations, Guarantor hereby grants to Lender a security interest in and hereby pledges and assigns to Lender the Membership Units, with such powers and membership rights attached thereto all duly endorsed in blank, herewith delivered to Lender, and any and all dividends, distributions and other proceeds thereof.

4.     TERMS AND CONDITIONS.

(a)     Subject to the provisions of the Loan Documents, Lender shall have the exclusive right to determine the application of payments and credits, if any, received by Lender from the undersigned, or Borrower.

(b)     Lender is authorized, without notice or demand, and without affecting the liability of Guarantor, from time to time to (i) renew, extend, accelerate or otherwise change the time for payment or performance of, or other terms relating to, the Obligations or any of them, or otherwise modify, amend or change the terms of the Loan Documents or any of them, or any other agreement, document or instrument now or hereafter executed by Borrower and delivered to Lender as allowed by said documents; (ii) accept partial payments on or performance of the Obligations; (iii) take and hold security or collateral for the undersigned's Obligations under this Agreement, or any other guaranties of, or support or security agreement relating to, the Obligations and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale as in its sole discretion it may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations and any security or collateral in any manner, without affecting or impairing the Obligations of the undersigned.

(c)     At any time after a Default, Lender may, at its discretion, upon notice to Guarantor and regardless of the acceptance of any security or collateral for the payment, appropriate and apply toward the payment and satisfaction of the Obligations (i) any indebtedness due or to become due from Lender to Guarantor; and (ii) any monies, credits or other property belonging to Guarantor, at any time held by Lender on deposit or otherwise.

(d)     Lender shall not be required to take any steps to preserve any rights against prior parties (if any) to or in any of the Collateral or Obligations.

(e)     Lender may, but shall not be obligated to, and the undersigned designates Lender as attorney-in-fact to, contest, pay and/or discharge all liens, encumbrances, taxes or

2

assessments on, or claims, actions or demands against any of the Collateral upon notice to, but without the consent of, the undersigned and to take all actions and proceedings in their name or in the name of Borrower or of any other appropriate person to remove or contest such liens, encumbrances, claims, actions, demands, taxes or assessments by litigation or otherwise. The undersigned agrees to pay on demand all costs, attorneys' fees, expenses, and all other sums advanced or paid by Lender pursuant to this paragraph 4(e).

(f)     Lender may, at its discretion, file one or more financing statements, and in that respect to serve as the attorney-in-fact for the undersigned for the purpose of executing such financing statements under the Uniform Commercial Code, naming Guarantor as debtor and Lender as secured party, and describing the types or items of Collateral. Lender may further serve as the attorney-in-fact for Guarantor for the purpose of executing any additional notices, affidavits or other documents as Lender may deem necessary to protect its security interest. Guarantor agrees to pay on demand the amount of any and all filing fees and expenses which Lender deems necessary to incur to protect its interest in the Collateral.

(g)     Lender shall exercise reasonable care in the custody and preservation of the Collateral to the extent required by applicable statute, and shall be deemed to have exercised reasonable care if it takes such action for that purpose as the undersigned shall reasonably request in writing; but under no circumstances shall any omission to comply with any such request of itself be deemed a failure to exercise reasonable care. The undersigned agrees to pay on demand any cost or expense, including without limitation, attorneys' fees and costs incurred by Lender in the reasonable preservation of the Collateral.

(h)     Guarantor consents and agrees that Lender shall be under no obligation to marshal any assets against, or in payment of, any or all of the Obligations of Borrower. Guarantor further agrees that to the extent that Borrower makes a payment(s) to Lender, which payment(s) are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation intended to be satisfied shall be renewed and continued in full force and effect as if said payment had not been made, and Guarantor shall, upon demand by Lender, immediately satisfy such obligation in full in accordance with the terms of this Agreement. Guarantor further agrees that any and all claims of Guarantor against Borrower or against its properties, arising by reason of any loan, advance, investment or other payment by the undersigned to Lender shall be subordinate and subject in right of payment to the prior payment, in full, of all sums due pursuant to the Obligations.

(i)     Guarantor assumes responsibility for keeping himself, herself or itself informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of Default. Lender shall have no duty to advise Guarantor of information known to Lender regarding such condition or circumstances.

(j)     No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver or constitute a discharge any of Guarantor's obligations under this Agreement, and no single or partial exercise by Lender of any right or remedy shall preclude the further exercise to any extent; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon Lender except as expressly set forth in a writing duly signed and delivered by an authorized officer of Lender. Lender's failure at any time to require strict performance by Borrower or any other party of any of the provisions, warranties, terms and conditions contained in the Loan Documents shall not discharge any of Guarantor's obligations under this Agreement, nor shall it waive, affect or diminish any right of Lender at any time to demand strict performance and such right shall not be deemed to have been waived by any act or knowledge of Lender unless such waiver is contained in an instrument in writing, signed by an

3

officer of Lender specifying such waiver. No waiver by Lender of any default shall operate as a waiver of either any other default or the same default on a future occasion, and no action or inaction by Lender including, without limitation, Lender's failure to take any steps to preserve its rights in the Collateral, shall in any way affect or impair Lender's rights or the obligations of Guarantor under this Agreement. Guarantor agrees that his obligations under this Agreement will not be discharged except by complete performance of all of the Obligations. Any determination by a court of competent jurisdiction of the sums owing by Borrower to Lender shall be conclusive and binding on Guarantor irrespective of whether Guarantor was a party to the suit or action in which such determination was made.

5. **WARRANTIES AND REPRESENTATIONS.** Guarantor hereby represents and warrants to Lender that:

(a) The execution, delivery, and performance by Guarantor of this Agreement will not violate any provision of law, any order of any court or other agency of government, or any agreement or other instrument to which Guarantor is a party or by which Guarantor is bound or be in conflict with, result in a breach of (with due notice or lapse of time, or both) a default under any such agreement or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of Guarantor, except as contemplated by the provisions of this Agreement;

(b) This Agreement constitutes the legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with the terms hereof;

(c) As to such of the Collateral deposited with Lender on the date hereof (i) Guarantor is the legal and beneficial owner of the Membership Units; (ii) the Membership Units are validly issued, fully paid, and non-assessable, and represent the percent of issued and outstanding membership units of (or other interest in) Borrower as set forth in Schedule I; (iii) the Membership Units transfer forms attached to the Certificates representing such Collateral have been duly executed and delivered by Guarantor to Lender; and (iv) none of the Collateral is subject to any security interest, pledge, lien or other encumbrance or adverse claim of any nature whatsoever.

(d) The undersigned shall provide updated financial statements by May 1 of each year.

6. **VOTING RIGHTS.** Unless and until a Default hereunder shall have occurred, Guarantor shall be entitled to exercise all voting powers pertaining to the Membership Units owned by Guarantor for any purposes not inconsistent with, or in violation of, the provisions of this Agreement in all corporate matters.

7. **DEFAULT.**

(a) Upon and during the continuance of any Default, Lender may, at its sole election: (i) proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any collateral or any other party or any other person, firm or corporation; (ii) with or without notice, transfer to or register in the name of itself or its nominee any of the Membership Units, and whether or not so transferred or registered, receive the income and dividends, including membership dividends and rights to subscribe, and hold the same as a part of the Collateral to secure the performance and payment of the Obligations, and/or apply the same as provided in this Agreement; (iii) exchange any of the Membership Units for other property upon the reorganization, recapitalization, or other readjustment of Borrower, and (iv) vote the Membership Units and exercise or cause its nominee to exercise all or any powers with the same

4

force and effect as an absolute owner. All of the above rights and powers may be exercised by Lender without liability, except the obligation to account for property actually received.

(b)     In addition to any other rights given by law and under this Agreement, Lender shall have the rights and remedies with respect to the Collateral of a secured party under the South Dakota Uniform Commercial Code (whether or not that Code is in effect in the jurisdiction where the rights and remedies are asserted) all of which remedies shall be cumulative, and none exclusive, to the extent permitted by law. Lender may sell or cause to be sold, in one or more sales or parcels, at such price or prices as Lender may deem best, and for cash or on credit or for future delivery, without assumption of any credit risk, all or any of the Collateral, at public or private sale, without demand of performance but with notice to the undersigned, and the purchaser of any or all of the Collateral so sold shall then hold the same absolutely, free from any claim or right of any kind including (but not limited to) any equity of redemption of Guarantor. Any requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to Guarantor at the address set forth below at least fifteen (15) days before the time of the sale or disposition. Any other requirement of notice, demand or advertisement for sale is waived. Lender may, in its own name, or in the name of its designee, buy at any public or, if permitted by law, any private sale, and, in lieu of the actual payment of the purchase price, Lender may set off the amount of such price against Guarantor's obligations hereunder. The undersigned will pay to Lender all expenses (including attorney's fees) of, or incident to, the enforcement of any of the provisions of this Agreement.

(c)     Any right to set-off exercised by Lender shall be deemed to have been exercised immediately on the occurrence of a Default, even though such set-off is made or entered on the books of Lender at any subsequent time.

(d)     In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Membership Units may be effected, it is agreed that in the event of a Default, Lender may from time to time attempt to sell all or any part of the Collateral by means of a private placement, restricting the bidders and prospective purchasers to those who will represent and agree that they are purchasing for investment only and not for distribution. The undersigned agrees that acceptance by Lender of the highest offer after soliciting offers from two or more potential buyers would be commercially reasonable.

(e)     Lender, at any time and at its option, may apply all or any net cash receipts from the sale of Collateral to the payment of the Obligations, applying or reapplying, or distributing or allocating the same as it shall elect, whether or not then due. In case of any sale by Lender of any of the Collateral on credit or for future delivery, the property sold may be retained by Lender until the selling price is paid by the purchaser, but Lender shall incur no liability in case of failure of the purchaser to take and pay for the property so sold. In case of any such failure, the property so sold may be again similarly sold.

8.     INDEMNIFICATION. Guarantor will at all times, now and hereafter, indemnify and hold Lender harmless from and against all loss or damage arising in connection with this Agreement and against all claims, liability, demands, actions or suits, and all liabilities, payments, costs, charges and expenses including, but not limited to, attorneys' fees and costs incurred by Lender on account of or in connection with the Agreement or the transactions or assertions of rights contemplated or permitted hereunder.

9.     MISCELLANEOUS.

(a)     This Agreement shall be binding upon the undersigned and upon the heirs, executors, successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns; all references to Borrower and to the undersigned shall be deemed to

5

include their respective successors, assigns, participants, receivers or trustees (as the case may be).

(b)     This Agreement embodies the entire understanding of the parties pertaining to the subject matter hereof, and shall constitute a continuing agreement applicable to future as well as existing transactions between Lender and Borrower.

(c)     THIS AGREEMENT HAS BEEN DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN DEADWOOD, SOUTH DAKOTA, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF SOUTH DAKOTA, AND AS PART OF THE CONSIDERATION FOR LENDER'S PERFORMANCE PURSUANT TO THE LOAN DOCUMENTS, THE UNDERSIGNED CONSENTS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF SOUTH DAKOTA, AND FURTHER CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED. THE UNDERSIGNED FURTHER CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

(d)     The headings used in this Agreement are for the convenience of the reader only; such headings constitute no part whatsoever of the Agreement between the parties.

(e)     No invalidity, irregularity or unenforceability of the Obligations (or any of them) hereby secured shall affect, impair or be a defense to any provision contained in this Agreement. If any term, condition or provision of this Agreement is determined to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other term, condition or provision of this Agreement.

(f)     If this Agreement shall differ or conflict in terms with any of the Loan Documents, the Agreement which gives Lender the greater right, as determined by Lender, shall prevail.

GUARANTOR:

By: _____

Its: _____

6

SCHEDULE I

MEMBERSHIP UNITS OF GUARANTOR

Membership Units (interests) in Tentexkota, L.L.C.

7

# FORBEARANCE AGREEMENT

This Forbearance Agreement is made and entered into by and between SDIF Limited Partnership 2, (SDIFLP 2). and Tentexkota, LLC, a South Dakota limited liability company, (Tentexkota), and its Members as Guarantors, this _____ day of June, 2015.

## RECITALS

WHEREAS, the parties acknowledge that Tentexkota is in default on the loan it has with SDIF Limited Partnership 2 arising out of the funding of a casino and hotel in Deadwood, South Dakota ("the Debt"); and

WHEREAS, the parties acknowledge that Notice of Default has been provided to Tentexkota pursuant to the original Credit Agreement dated April 28, 2010, the Amended Credit Agreement dated April 4, 2011, all subsequent loan documents and personal guarantees, and all other documents associated therewith (collectively "the Loan Documents"); and

WHEREAS, the parties acknowledge that Notice of Default has been properly provided; and

WHEREAS, the parties are desirous of resolving their differences and curing the default under the following terms and conditions.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and for other good and valuable consideration, SDIFLP 2, Tentexkota for itself, and its Members who are also Guarantors, for themselves, their heirs, executors, administrators or trustees, agree as follows:

1.      Tentexkota shall pay to SDIFLP 2 the sum of One Million Five Hundred Thousand Dollars ($1,500,000) as consideration for this Agreement and as payment of all interest and late fees accrued on the Debt prior to May 7, 2015.  Payment will be made as follows:  the sum of Five Hundred Thousand Dollars ($500,000) upon execution of this Agreement and the remaining balance of One Million Dollars ($1,000,000) within sixty (60) days of final approval of this Agreement by the investors of SDIF LP 2.

2.      On the date of this Agreement, the following individuals shall provide updated financial statements and if requested by SDIFLP2, additional personal guarantees in form attached hereto as Exhibit 2: Michael Gustafson, Dale Morris, Marc Oswald, Timothy Conrad, Dwight Wiles, and W. Kenneth Alphin.

3.      SDIFLP 2 agrees that from the date of this Agreement and as long as Tentexkota complies with the terms of this Agreement, and so long as no additional event of default occurs under the Loan Documents or this Agreement, it will forbear from exercising its remedies under the Loan Documents and South Dakota law.



EXHIBIT

S

4.      Tentexkota will cooperate by providing all information necessary and requested by SDIFLP 2 or anyone on behalf of SDIFLP 2 or the investors to aid in providing information to United States Citizenship and Immigration Services pursuant to any RFE, litigation or otherwise to help the investors in the removal of the conditionality of their permits.

5.      Tentexkota shall provide 2015 and 2016 projections for the Casino, Hotel, and other properties associated with the Project, and a current appraisal of the real property and improvements associated with the Deadwood Mountain Grand.

6       Tentexkota agrees that interest will increase by One Percent (1%) to Five and One-Half Percent (5.5%) on the outstanding loan balance from May 7, 2015 forward.

7.      The undersigned agree that the outstanding obligation will be due in full on or before May 7, 2016 by payment of principle of Thirty-two Million Five Hundred Thousand Dollars ($32,500,000) and all interest accrued thereon.

8.      This Agreement is contingent upon approval by the limited partners of SDIFLP 2. SDIFLP 2 will inform Tentexkota in writing when this condition has been satisfied. In the event, the limited partners of SDIFLP 2 do not approve this Agreement, Tentexkota shall have an additional thirty (30) days to cure the existing default from the date it receives notice of the rejection of this Agreement by the limited partners of SDIFLP 2. In addition, if the limited partners do not approve this Agreement, the money paid by Tentexkota to SDIFLP 2 will be credited toward the Debt and any fees or interest associated therewith.

9.      The undersigned further agree that all previous loan documents remain in full force and effect as is reaffirmed herein. The only changes thereto are those changes set forth in this Agreement; however, all other obligations shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

SDIF Limited Partnership 2

By:_____
    Its: Manager_____

TENTEXKOTA, LLC

By:_____
    Its:_____

2

4.   Tentexkota will cooperate by providing all information necessary and requested by SDIFLP 2 or anyone on behalf of SDIFLP 2 or the investors to aid in providing information to United States Citizenship and Immigration Services pursuant to any RFE, litigation or otherwise to help the investors in the removal of the conditionality of their permits.

5.   Tentexkota shall provide 2015 and 2016 projections for the Casino, Hotel, and other properties associated with the Project, and a current appraisal of the real property and improvements associated with the Deadwood Mountain Grand.

6   Tentexkota agrees that interest will increase by One Percent (1%) to Five and One-Half Percent (5.5%) on the outstanding loan balance from May 7, 2015 forward.

7.   The undersigned agree that the outstanding obligation will be due in full on or before May 7, 2016 by payment of principle of Thirty-two Million Five Hundred Thousand Dollars ($32,500,000) and all interest accrued thereon.

8.   This Agreement is contingent upon approval by the limited partners of SDIFLP 2. SDIFLP 2 will inform Tentexkota in writing when this condition has been satisfied. In the event, the limited partners of SDIFLP 2 do not approve this Agreement, Tentexkota shall have an additional thirty (30) days to cure the existing default from the date it receives notice of the rejection of this Agreement by the limited partners of SDIFLP 2. In addition, if the limited partners do not approve this Agreement, the money paid by Tentexkota to SDIFLP 2 will be credited toward the Debt and any fees or interest associated therewith.

9.   The undersigned further agree that all previous loan documents remain in full force and effect as is reaffirmed herein. The only changes thereto are those changes set forth in this Agreement; however, all other obligations shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

SDIF Limited Partnership 2

By:_____
   Its:_____


TENTEXKOTA, LLC

By: _Marc Wayne Oswald_____
   Its:  Marc Oswald, Managing Partner_____

2

_____          _____
Dale Morris                         Marc Oswald

_____          _____
Mike Gustafson                      W. Kenneth Orphin

_____          _____
Timothy Conrad                      Dwight Miles



JEFFREY T. SVEEN
JOSEPH P. BARNETT
REED RASMUSSEN
GREGG C. MAGERA
JULIE DWORAK*•
RODERICK L. TOBIN*
CHRISTOPHER JUNG*■

•Also licensed in North Dakota
•Also licensed in Montana
■Also licensed in Minnesota

# SIEGEL BARNETT & SCHUTZ LLP
## ATTORNEYS AT LAW

415 S. MAIN STREET - 400 CAPITOL BUILDING
P.O. BOX 490
ABERDEEN, SOUTH DAKOTA 57402-0490

STAN SIEGEL (1928-1995)
JOSEPH H. BARNETT (1931-1985)
RAYMOND M. SCHUTZ (1925-2012)
TERRENCE A. O'KEEFE (1935-1999)

TELEPHONE (605) 225-5420
FAX (605) 226-1911
Web Site: www.sbslaw.net

May 11, 2016
## VIA E-MAIL and FIRST CLASS MAIL

Mr. Scott N. Heidepriem
Heidepriem, Purtell, & Siegel
101 West 57th Street, Suite 105
Sioux Falls, SD 57108
scott@hpslawfirm.com

Re:     Notice of Default of Tentexkota, LLC

Dear Mr. Heidepriem:

Pursuant to our discussion last week and your e-mail of Monday, May 9, 2016, it is my understanding that you are authorized to admit service as to the Notice of Default by Tentexkota, LLC. You indicated that you will admit service both as to the Tentexkota, LLC and each of the individual Guarantors. The individuals subject to the guarantees are:

1. Michael R. Gustafson;
2. Dwight Wiles;
3. Dale Morris;
4. Tim Conrad;
5. Ronald W. Wheeler;
6. Marc Oswald;
7. George Mitchell; and
8. W. Kenneth Alphin

If you are not authorized to do the same, please let me know immediately and I can have the individuals served.

Please be further advised that this letter is intended as the *official notice* that Tentexkota, LLC, a South Dakota limited liability company, is in default on its obligations to SDIF Limited Partnership 2 pursuant to loan documents entered into as a result of a Credit Agreement originally entered into on April 28, 2010, an Amendment to the Credit Agreement dated April 4, 2011, and an Amended Credit Agreement dated June 22, 2011.

In addition, there are numerous documents associated therewith including, but not limited to:

• Mortgage dated April 28, 2010;
• Security Agreement and Pledge Agreement dated April 20, 2010;
• Promissory Note dated April 28, 2010;
• Collateral Assignment dated April 28, 2010;
• Mortgage dated April 4, 2011;



EXHIBIT
T

Mr. Scott N. Heidepriem
May 11, 2016
Page 2

- Amended Security Agreement and Amended Pledge Agreement dated June 22, 2011;
- Amended Collateral Assignment dated June 22, 2011;
- Forbearance Agreement dated June 19, 2015;
- Guaranty and Pledge Agreements of the members of Tentexkota, LLC; and other associated loan documents and guarantees all referred to hereinafter as, "loan documents."

In addition, there is a billing for legal services dated February 4, 2016 in the amount of $5,941.52, for which Tentexkota, LLC is also in default thereon.

Pursuant to the original Credit Agreement, payment is in default by Tentexkota, LLC in the total amount of $32,500,000, plus interest and expenses therefrom. Pursuant to Section 4.1.1, SDIF LP 2 is hereby declaring a default due to non-payment, under Section 4.1.2, for non-performance, and under Section 4.1.12 for other default.

As you can see, there are similar articles in the Amended Credit Agreement setting forth the same defaults.

Pursuant to the Credit Agreement and the Forbearance Agreement, notice is hereby being provided that the entire amount is due and the default interest rate of 12% is hereby being invoked.

Pursuant to the loan documents, Tentexkota, LLC has thirty (30) days to cure any default. If such default is not cured, then SDIF LP 2 will proceed with all remedies allowed under the loan documents, as well as State law including, but not limited to, enforcing the guarantees provided.

As indicated in my e-mail, my client is more than willing to meet with you to discuss any options; however, the investors are expecting payment in full on this obligation. As you may be aware, your client was already granted a forbearance of an additional term of one (1) year, which Tentexkota, LLC is evidently unable to fulfill.

In our conversation, you indicated that you did not think your client was obligated to pay attorney fees and costs incurred in the most recent Notice of Foreclosure and Forbearance matter. Please refer to Paragraph 3.18 of the original Credit Agreement, Paragraph 6(e) of the Promissory Note and similar paragraphs in the Mortgage and Security Agreements and other loan documents obligating your client to pay reasonable attorney fees incurred in any collection matter.

If you desire to meet with some proposed resolution, please let me know. As my e-mail indicated, we could meet on Friday or Monday. I look forward to hearing from you. Thank you.

Very truly yours,

Jeffrey T. Sveen
of SIEGEL, BARNETT & SCHUTZ, L.L.P.
jsveen@sbslaw.net

JTS:kls

STATE OF SOUTH DAKOTA )
                          ) SS
COUNTY OF LAWRENCE )

Ct. File # 40CIV16-000306

|  |  |
|---|---|
| SDIF LIMITED PARTNERSHIP 2, a South Dakota limited partnership | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) CERTIFICATE OF SERVICE ) |
| TENTEXKOTA, L.L.C., a South Dakota limited liability company, et al. | ) ) ) |
| Defendant, | ) ) |

I, __Robert Grass__ , Elector / Constable of Pennington County, South Dakota, hereby certify and return that the annexed, **SUMMONS and COMPLAINT**_____

_____

came into my hands on the __4TH__ day of __November__, 2016, and that I completed service of the same on, __MICHAEL R. GUSTAFSON_____, on the __7TH__ day of __November__, 2016, at __0923__ hrs. at, __4021 MOUNTAIN SHADOW PLACE_____, __Rapid City,__ Pennington County, South Dakota, by,

☒ personally delivering to and leaving a copy / copies thereof with **MICHAEL R. GUSTAFSON**_____

_____

☐ substituting service at the dwelling house of said person, with _____

who was then a member of his/her family (or the family with which he/she resides) over the age of fourteen years, and that service was so made for the reason that said person could not be found conveniently in said county.

☐ returning the annexed documents unserved because of the following reason: _____

_____

That the costs of service herein are as follows:

| | |
|---|---|
| Endeavors | _____ |
| Service | $ 10.00 |
| Mileage | $ 0 |
| Tax | $ .65 |
| Total Fees | $ 10.65 |

_____
Constable - Pennington County  - Elector

**J & J Attorney Service, PO Box 8024, Rapid City, South Dakota, 57709,   (605) 342-0077**

STATE OF SOUTH DAKOTA )
                        ) SS
COUNTY OF LAWRENCE )

Ct. File # 40CIV16-000306

SDIF LIMITED PARTNERSHIP 2, a South
Dakota limited partnership

                                  Plaintiff,

vs.

TENTEXKOTA, L.L.C., a South Dakota
limited liability company,  et al.

                                 Defendant,

) CERTIFICATE OF SERVICE

I, **Robert Grass** , Elector / Constable of Pennington County, South Dakota, hereby certify and return that the annexed, **SUMMONS and COMPLAINT**

came into my hands on the **4TH** day of **November**, 2016, and that I completed service of the same on, **TENTEXKOTA, L.L.C.**, on the **7TH** day of **November**, 2016, at **0923** hrs. at, **4021 MOUNTAIN SHADOW PLACE**, Rapid City, Pennington County, South Dakota, by,

☒ personally delivering to and leaving a copy / copies thereof with **MICHAEL GUSTAFSON - REGISTERED AGENT**

☐ substituting service at the dwelling house of said person, with _____

who was then a member of his/her family (or the family with which he/she resides) over the age of fourteen years, and that service was so made for the reason that said person could not be found conveniently in said county.

☐ returning the annexed documents unserved because of the following reason: _____

That the costs of service herein are as follows:

| | |
|---|---|
| Endeavors | 4 |
| Service | $ 50.00 |
| Mileage  40 | $ 16.00 |
| Tax | $  4.29 |
| Total Fees | $ 70.29 |

_____
Constable - Pennington County  - Elector

J & J Attorney Service, PO Box 8024, Rapid City, South Dakota, 57709,  (605) 342-0077

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | ) SS | |
| COUNTY OF LAWRENCE | ) | FOURTH JUDICIAL CIRCUIT |

| | |
|---|---|
| SDIF Limited Partnership 2, a South Dakota limited partnership, | ) File No. 40-CIV16-000306 ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) NOTICE OF APPEARANCE ) |
| Tentexkota, L.L.C., a South Dakota Limited liability company, W. Kenneth Alphin, Timothy J. Conrad, Michael R. Gustafson, George D. Mitchell, Dale Morris, Marc W. Oswald, Ronald W. Wheeler, and Dwight P. Wiles, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

The Law Firms of Bangs McCullen, Butler, Foye & Simmons, L.L.P., Heidepriem, Purtell & Siegel, L.L.P., and Ronayne & Cogley, P.C., hereby enter their appearance as counsel of record for Defendants in the above-entitled action. Please direct all copies of any future pleadings in this action to the undersigned.

Dated this 14th day of November, 2016.

*[The rest of this page was intentionally left blank.]*
*[See page 2 for signatures of counsel for Defendants]*

Page **1** of **2**

BANGS, McCULLEN, BUTLER,
FOYE & SIMMONS, L.L.P.

BY: _____
MARK F. MARSHALL
333 West Blvd., Suite 400; P.O. Box 2670
Rapid City, SD 57709-2670
(605) 343-1040 (phone)
(605) 343-1503 (fax)
Email: mmarshall@bangsmccullen.com

-and-

HEIDEPRIEM, PURTELL
& SIEGEL, L.L.P.

SCOTT N. HEIDEPRIEM
KASEY L. OLIVIER
JOHN R. HINRICHS
ASHLEY M. MILES HOLTZ
101 West 69th Street, Suite 105
Sioux Falls, SD 57108
(605) 679-4470

-and-

RONAYNE & COGLEY, P.C.

ROBERT M. RONAYNE
24 Fifth Ave. SW
P.O. Box 759
Aberdeen, SD 57402
(605) 225-0100
*Attorneys for Defendants*

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | ) SS | |
| COUNTY OF LAWRENCE | ) | FOURTH JUDICIAL CIRCUIT |

| | | |
|---|---|---|
| SDIF Limited Partnership 2, a South Dakota limited partnership, | ) ) ) | File No. 40-CIV16-000306 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CERTIFICATE OF SERVICE |
| Tentexkota, L.L.C., a South Dakota Limited liability company, W. Kenneth Alphin, and Timothy J. Conrad, Michael R. Gustafson, George D. Mitchell, Dale Morris, Marc W. Oswald, Ronald W. Wheeler, and Dwight P. Wiles, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

The undersigned certifies that on November 14, 2016, he caused a true and correct copy of the Notice of Appearance to be served upon the person(s) identified below as follows:

[ ] First Class Mail         [ ] Overnight Mail
[ ] Hand Delivery           [ ] Facsimile
[ ] Electronic Mail         [X] ECF System

Haven L. Stuck
Lynn, Jackson, Shultz & Lebrun, P.C.
P.O. Box 8250
Rapid City, SD 57709
hstuck@lynnjackson.com

BANGS, McCULLEN, BUTLER,
FOYE & SIMMONS, L.L.P.

BY: /s/ Mark F. Marshall
MARK F. MARSHALL
333 West Blvd., Suite 400; P.O. Box 2670
Rapid City, SD 57709-2670
(605) 343-1040 (phone)
mmarshall@bangsmccullen.com